## Behrens et al. *v.* Poetker, Receiver.

[No. 21,082.    Filed July 1, 1910.    Rehearing denied April 21, 1911.]

Bills and Notes. — *Consideration.—Banks.—Overdrafts.—Rediscounting Paper.*—Where a bank depositor had largely overdrawn his account, and he and the cashier of such bank executed their separate notes for $3,000 each and discounted them at another bank, a draft for the proceeds being made payable to the bank, but such depositor was credited with the entire proceeds, and when such notes became due such cashier rediscounted notes belonging to the bank and with their proceeds paid the notes executed by him and such depositor, all without the knowledge of the officers of the bank, the note in suit given by such cashier and his sureties to reimburse the bank for the amounts of the notes rediscounted by such cashier is supported by a consideration, not only as to such cashier, but also as to his sureties.

From Dubois Circuit Court; *E. A. Ely*, Judge.

Action by Fred H. Poetker, as receiver of the People's State Bank of Huntingburg, against Charles Behrens and others. From a judgment for plaintiff, defendants appeal. *Affirmed.*

*William T. Zenor* and *Traylor & Traylor*, for appellants.
*Fisher & Armstrong*, for appellee.

MYERS, J.—Appellee, as receiver of the People's State Bank of Huntingburg sued appellants upon a promissory note, and recovered judgment for $6,751.15. Appellant Charles Behrens filed a separate answer in denial, an answer of duress, and an answer of want of consideration. The two coäppellants answered in six paragraphs. The fifth paragraph went out on demurrer. The first paragraph was the general denial; the second, want of consideration; the third, duress in the execution of the note as sureties for Charles Behrens, and asking its surrender and cancelation; the fourth, extortion, duress, intimidation, coercion and want of consideration, and the sixth, that the note was executed by them as sureties for Charles Behrens by way of indemnity, that no loss was suffered by the payee, and that the consideration had failed.

All the appellants jointly, Charles Behrens separately, and his two coäppellants jointly, assign error in overruling their respective motions for a new trial.

The question urged here is the insufficiency of the evidence as to the consideration of the note. Appellant Behrens was a director and cashier of the People's State Bank of Huntingburg, Dubois county, and was in charge of its business and books. On November 14, 1905, one Wulfmann had an overdraft in that bank of more than $40,000. Behrens and Wulfmann on that day each personally executed a note for $3,000 to another bank, for which notes the latter bank issued two drafts for $3,000 each on a New York bank, payable to the order of the People's State Bank. Behrens credited Wulfmann with $6,000 on receipt of the two drafts for $3,000 each, and on the same day forwarded the two drafts for credit with two other banks, and received credit with those banks for $3,000 in each. This occurred without the knowledge of the officers of the People's State Bank. On March 6, 1906, Behrens, without the knowledge or consent of the directors, or other officer of the bank, took from the safe of the People's State Bank three notes belonging to

the bank, not then due, aggregating $5,700, and rediscounted them with another bank. He forwarded the proceeds from those notes, and procured credit for $5,700 to be obtained for the People's State Bank with another bank, but on the same day drew a draft against the same bank for $6,000, and with that sum took up the two notes given by himself and Wulfmann on November 14, 1905. He carried the notes that he had rediscounted, on the books of the bank, as assets of the bank, after they had been rediscounted, and left in the vault the slips which he had detached from the notes. When the People's State Bank officers discovered that the notes had been rediscounted, and were not among the bank's assets, though so carried by cashier Behrens, and that he had used the proceeds of the rediscounted notes to take up the notes of himself and Wulfmann, they demanded that he make the sum good, and were urgent in their demands, and the note in suit was given. The defense sought to be made was that as the bank received credit for the proceeds of the rediscounted notes, there was no consideration for the note in suit.

The root of the matter lies deeper, in the fact that the two notes for $3,000 each were not notes given or indorsed by the People's State Bank. The only credit given on the books of that bank was given Wulfmann. When, therefore, appellant Behrens took from the bank the notes aggregating $5,700 and paid the notes given by himself and Wulfmann, the bank was made to pay the notes from which Wulfmann obtained the credit. Behrens now claims that in giving the credit to Wulfmann he falsified the books, and that he received nothing from Wulfmann. It seems perfectly plain that some one should have received credit for the drafts received by the People's State Bank as proceeds of the two notes for $3,000 each, and as no one but Wulfmann received that credit, that seems to have been the true transaction. Either Wulfmann or Behrens was entitled to credit for the proceeds of the notes discounted by them, and the fact that

Behrens had permitted Wulfmann largely to overdraw, and Behrens received no credit shows that Wulfmann did receive credit, and Behrens' statement concerning that transaction now, when he is seeking to evade payment of the note, does not impress us, as it doubtless did not the learned trial judge.

Looking through the form of the transaction to the substance, the honest transaction was in crediting Wulfmann. According to Behren's theory, he did not charge any account, or credit any one but Wulfmann, at the time, and that was the correct thing to do. But, in order to escape liability on the note in suit, he now claims the credit to Wulfmann as fictitious, and that he received nothing from Wulfmann. Certainly Wulfmann had no authority to execute notes for the benefit of the bank, much less to obtain personal credit for bank liabilities, and quite certain it is that Wulfmann received credit for $6,000 on the books, in connection with the receipt by the bank of the two drafts, which were the proceeds of the two notes. It is equally certain that the bank gave nothing in return but a credit to Wulfmann, and quite as certain that Wulfmann was not entitled to credit, if the notes were executed for the benefit of the bank. Neither does it appear that Behrens had any authority to execute notes, borrow money, or rediscount notes for the bank, nor does it appear that that was a usual or customary thing to be done by him, or that he had done so at other times. There could be no good faith in giving Wulfmann a fictitious credit, but there would be good faith in giving him credit for the proceeds of the notes, because he was entitled to that credit, and the fact that the officers of the bank did not understand all the ramifications of the cashier's fraud, which he was endeavoring to conceal, should not blind the court to the bald fact that the cashier used the money of the bank to pay his own and Wulfmann's debt. There is no question here of the bank's receiving the proceeds of the

rediscounted notes, nor of bad judgment honestly exercised, nor of the cashier's permitting overdrafts, but a plain case of his deliberately taking the money of the bank, and paying his own and another's debt, thus causing a direct loss to the bank of $6,000. If the notes were executed for the accommodation of the bank, why should Wulfmann receive credit for their proceeds? If they were executed for Wulfmann's benefit, why should the bank pay them? The whole situation is now sought to be changed by the claim of the cashier, that the credit to Wulfmann was false and fictitious; but he fails to show credit given to any one else, and also fails to show a charge of obligation against the bank on account of these notes. He seems to think that because the bank in the first instance received credit for the proceeds of the notes he had rediscounted, that was all that it could demand from him; but that is incorrect. He had converted the proceeds of those rediscounted notes and more, by paying his own and Wulfmann's notes. His coäppellants claim that the note in suit was given to indemnify the bank, and when the bank is shown to have received credit for the rediscounted notes, that ended the responsibility of the principal and of themselves. The note in suit was given more than three months after the notes had been rediscounted and their proceeds used in taking up the Wulfmann-Behrens notes, and the contention then made by the officials—that he had converted the money—was a just and reasonable one. The note in the evidence was referred to at times as "indemnity" and as "collateral," but the whole evidence shows the true transaction. The fact that the officers of the bank may have had a misconception of the legal office the note in suit performed, and understood and treated it as technically taking the place of the rediscounted notes, does not change the transaction, which was, in effect, the making good of a technical conversion by the cashier of the notes, and an actual conversion of the funds of the bank. The bank officials might not have known

just how the manipulation was sought to be concealed, or how carried out, but they did arrive at the proper conclusion that there was a loss of $5,700, and demanded that the cashier make it good, which he did by the note in suit; and there is abundant evidence to support the recovery, which was, in our judgment, properly obtained.

The judgment is affirmed.

## ON PETITION FOR REHEARING.

MORRIS, J.—Appellants have filed a petition for rehearing, and, in their brief, counsel earnestly insist that the evidence without contradiction shows that appellant Charles Behrens was the cashier of the People's State Bank, and as such cashier rediscounted three notes to the Crawford County State Bank for $5,700, and the former bank received the payment therefor; that the note sued on was executed to indemnify the People's State Bank against loss by reason of its indorsement of the three notes rediscounted; that the three notes were paid by the makers thereof at maturity, and consequently there was a failure of the consideration for which the note in suit was executed.

The facts are, that on March 6, 1906, Charles Behrens, the cashier, was indebted to the Tell City National Bank in the sum of $6,000, evidenced by two notes of $3,000 each, executed by him and one Wulfmann, on November 14, 1905, due March 1, 1906. To procure funds with which to pay these notes, Behrens took from the safe in the bank vault three notes belonging to the bank, and sold them to the Crawford County State Bank, and received therefor a draft for $5,700, payable to the People's State Bank. When this draft was received, on March 7, 1906, he remitted it to the New York correspondent of the People's State Bank, to be credited on the latter's account. At the same time he issued a draft of the latter bank on its New York correspondent, in the sum of $6,000, payable to the cashier of the Tell City National Bank, and sent this draft to the

latter bank to pay the two notes for $3,000 each which he owed as an individual. This draft was received by the Tell City National Bank, and the proceeds applied as directed. All this was done without either the knowledge or the consent of any other officer of the bank.

In June following, the directors of the People's State Bank discovered that Behrens had taken the three notes from the bank safe and had sold them for $5,700, and they demanded restitution. In response to this demand, the note in suit was delivered to the bank. The president of the bank testified as follows: "The note was given to reimburse the People's Bank for certain notes that Behrens had taken out of the safe and sold to the Crawford County State Bank." The facts before stated are shown by the evidence, beyond all doubt. The cashier frankly admitted, while on the witness-stand in the forenoon, that his purpose in selling the three notes for $5,700 was to take up his individual notes for $6,000, but in the afternoon he attempted to correct this testimony. The trial court was entirely justified in believing that his original testimony stated the truth. At the time the note in question was executed, nothing was said by the directors of the bank to indicate any apprehension on their part about the liability of the bank on its indorsement of the notes sold. No one questioned the solvency of the makers of the three notes. The sole purpose of the directors, as shown by the evidence, was to procure reimbursement for the loss of the proceeds of the notes sold by the cashier.

Courts regard the substance rather than the form of a transaction, and determine its character by a consideration of all the parts thereof, rather than particular features. While it is true that the amount of the draft given for the sale of the three notes was placed to the credit of the People's State Bank at the office of its New York correspondent, at the same time, and as a part of the same transaction, the account of the People's State Bank with its New York

correspondent was charged with the amount of the draft—$6,000—issued to pay the cashier's individual indebtedness, and as a net result its New York account was $300 short, and its notes, of the value of $5,700, were gone. It is to be presumed that if the directors of the People's State Bank had known that, at the same time the notes were abstracted, $300 had been added to its liability to its New York correspondent, they would have demanded a note for $6,000 instead of $5,700, but all these transactions were had without the knowledge of the other officers of the bank.

The substance of the transaction was the conversion to his own use, by the cashier, of the proceeds of the sale of the bank's notes. It would be a reproach to the court if it lost sight of the real character of the transaction by considering only a part of it as disclosed by a method of bookkeeping, contrived to deceive and mislead. There is no error in the record. Petition for rehearing overruled.